# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **GERALD KAVONIUS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 4485 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **BOISE CASCADE OFFICE PRODUCTS,** | ) | |
| and **ILLINOIS INDUSTRIAL COMMISSION,** | ) | |
| and **TEAMSTERS UNION LOCAL 743,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gerald Kavonius, alleges that Defendant, Boise Cascade Office Products (hereinafter "BCOP"), fired him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* (hereinafter "ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (hereinafter "ADEA"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (hereinafter "ERISA"), and Illinois state law. BCOP now moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enter a summary disposition of Plaintiff's claims in its favor. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, BCOP's motion is granted.

## I. Background

### A. Procedural Background

On June 14, 2001, Plaintiff brought *pro se* complaints against BCOP, Teamsters Union Local 743, and the Illinois Industrial Commission (hereinafter "IIC"). (Dkt. No. 1.) Plaintiff's complaints against Teamsters Union Local 743 and the IIC were dismissed with prejudice on July 31, 2001, and August 9, 2001, respectively. (Dkt. Nos. 9, 11.) On April 1, 2003, the remaining parties—Plaintiff and BCOP—consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. Nos. 35-36.) Plaintiff's motion for appointment of counsel was granted on May 2, 2003, (Dkt. No. 41), but Plaintiff dismissed his court appointed attorney on September 6, 2005. (Dkt. No. 53.) As a result, Plaintiff was once again proceeding *pro se* when BCOP filed its motion for summary judgment and Local Rule 56.1(a) Statement of Uncontested Facts (hereinafter "BCOP's Local Rule 56.1(a) Statement") on October 17, 2005.

The parties fully briefed BCOP's summary judgment motion and appeared before this Court for oral argument on January 20, 2006. At that time, it came to the Court's attention that Plaintiff had not received a copy of Local Rule 56.2, Notice to *Pro Se* Litigants Opposing Summary Judgment, as required in the United States District Court for the Northern District of Illinois. (Oral Arg., Jan. 20, 2006.) The Court immediately presented Plaintiff with the Local Rule 56.2 notice and, in open court, had Plaintiff read the rule and assure the Court that he understood what the rule required. (Id.) The Court then granted Plaintiff thirty days in which to amend his response in opposition to BCOP's motion for summary judgment, in order to ensure that the response complied with the Federal and Local Rules of Civil Procedure. The parties requested additional time to file their amended briefs and, on March 15, 2006, Plaintiff submitted

his amended response. (Dkt. No. 75.) On May 2, 2006, Plaintiff refiled his amended response with slight alterations to his attached evidence and exhibits. (Dkt. No. 80.) Though the Court did not give Plaintiff leave to refile his amended response, the Court accepted the brief nonetheless and considered it in conjunction with Plaintiff's original amended response when ruling on this motion. Despite receiving notice and multiple opportunities, Plaintiff's response briefs did not contain a proper Local Rule 56.1(b) response to BCOP's Local Rule 56.1(a) Statement.

### B.    Factual Background

The following facts are undisputed and are taken from BCOP's Local Rule 56.1(a) Statement and accompanying exhibits. Under Local Rule 56.1(b)(3), "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Although Plaintiff denies several paragraphs of BCOP's Local Rule 56.1(a) Statement in his brief, Plaintiff did not file a proper Local Rule 56.1(b) response.[1] It follows that all the supported facts contained in BCOP's Local Rule 56.1(a) Statement are deemed admitted by Plaintiff.

Plaintiff began employment with BCOP in July 1984. (BCOP's L.R. 56.1 ¶ 5.) Plaintiff worked as a distribution specialist, also referred to as a "bin order filler," until the Spring of 1993, when Plaintiff claimed that he suffered a back injury on the job. (Id.) In July 1993,

---

[1] Plaintiff's amended response did include approximately thirty-four exhibits, as well as a table of contents that describes each exhibit. Plaintiff's amended response did not include a Local Rule 56.1 response to BCOP's Local Rule 56.1(a) Statement, nor a Local Rule 56.1 statement of facts supporting Plaintiff's arguments. (Pl.'s Am. Resp., May 2, 2006, at Pl.'s Aff.)

Plaintiff filed a workers' compensation claim with the IIC, (id. ¶ 6), and then underwent a series of back treatments and surgeries. (Id. ¶ 7.) Plaintiff never returned to work with BCOP. (Id.)

On February 16, 1995, BCOP sent Plaintiff a letter asking for an update on his condition and advising Plaintiff that BCOP had asked his doctor for an evaluation of whether he could perform his job. (Id. ¶ 8.) On April 29, 1995, BCOP received a report from Plaintiff's doctor releasing Plaintiff to return to work but restricting him to a job that predominantly required standing and walking, with occasional sitting, and negligible bending and lifting, and a limitation on lifting no more than twenty pounds. (Id. ¶ 9.) The restrictions on Plaintiff's working ability eliminated him from returning to work as a "bin order filler." BCOP then discussed with Plaintiff open positions in shipment planning, customer service, and as an accounting assistant. Because of the pressure and stress of meeting deadlines these positions could create, Plaintiff declined the jobs.[2] (Id. ¶ 10.)

On May 19, 1995, BCOP discussed with Plaintiff the opportunity for Plaintiff to apply for a disability pension. BCOP offered to help Plaintiff with the application and asked him to respond to the offer so the process could be expedited. (Id. ¶ 11.) By June 2, 1995, Plaintiff had not responded to the offer to apply for a disability pension and his employment was terminated. (Id. ¶ 12.) The offer to assist Plaintiff with the disability pension application, however, remained open. (Id.)

---

[2] The facts contained in paragraph 10 of BCOP's Local Rule 56.1(a) Statement are taken from Illinois Human Rights Commission (hereinafter "IHRC") hearings. IHRC findings in an employment case may not be preclusive, but are admissible as evidence and entitled to great weight by the Court. *Darden v. Ill. Bell. Tel., Co.*, 797 F.2d 497, 504 (7th Cir. 1986).

On November 29, 1995, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights (hereinafter "IDHR") and the EEOC, alleging age and disability discrimination in his termination. (Id. ¶ 13.) After investigation and a hearing, the IDHR made factual findings and dismissed Plaintiff's charge. Plaintiff filed an administrative appeal to the IHRC, which affirmed the findings of the IDHR. (Id. ¶ 14.) On April 10, 2001, the EEOC adopted the findings of the IHRC, dismissed Plaintiff's charge and issued its Right to Sue letter. (Id. ¶ 15.) Plaintiff then filed this lawsuit on June 14, 2001. (Dkt. No. 1.)

## II. **Discussion**

### A. **Jurisdiction is Proper.**

This Court has jurisdiction over the subject matter of this case because Plaintiff brings three claims under federal statutes, namely the ADA, ADEA, and ERISA. This Court also has supplemental jurisdiction over Plaintiff's Illinois state law wrongful discharge claim, pursuant to 28 U.S.C. § 1367.[3] Venue is proper in this Court because all the events about which Plaintiff complains took place within the Northern District of Illinois. (BCOP's L.R. 56.1 ¶ 3.)

---

[3] Plaintiff alleges that this Court lacks jurisdiction to hear BCOP's motion for summary judgment because BCOP failed to comply with Local Rule 78.3. (Pl.'s Am. Resp., May 2, 2005, at 2.) Local Rule 78.3 states that "[f]ailure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto, but the court on its own motion or that of a party may strike the motion or grant the same without further hearing." Local R. 78.3. In this case, BCOP was given until October 17, 2005, to file its motion for summary judgment. (Dkt. No. 52.) On October 17, 2005, BCOP filed its motion for summary judgment, a memorandum in support of its motion, and a Local Rule 56.1(a) statement of material facts in support of its motion. (Dkt. Nos. 55-57.) Because BCOP did not fail to file a supporting memorandum, and because neither the Court nor Plaintiff moved to strike BCOP's motion for summary judgment, Plaintiff's Local Rule 78.3 argument is rejected.

**B.     Summary Judgment Standard**

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Sinkler v. Midwest Prop. Mgmt. Ltd.*, 209 F.3d 678, 683 (7th Cir. 2000). In determining whether summary judgment is appropriate, the Court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). However, if the non-movant bears the burden of proof on an issue he may not simply rest on the pleadings, but rather must affirmatively set forth specific facts establishing the existence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322-26.

Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. If taking the record in its entirety cannot lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**C.     ADA Claim**

Plaintiff claims that he is disabled under the ADA and that BCOP failed to accommodate him. To prove his ADA failure to accommodate suit, Plaintiff must show that (1) Plaintiff was disabled, (2) BCOP was aware of Plaintiff's disability, (3) Plaintiff was a qualified individual

- 6 -

who, with or without reasonable accommodation, could perform the essential functions of the employment position, and (4) BCOP failed to reasonably accommodate Plaintiff's disability. *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001); *McPhaul v. Bd. of Comm'rs of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000). BCOP argues that Plaintiff is not protected by the ADA because he is not "disabled" under the ADA. BCOP also argues that it made reasonable attempts to accommodate Plaintiff but Plaintiff refused to return to work.

1. Plaintiff is not disabled under the ADA.

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To be "disabled" under the ADA, the Court must find: (1) Plaintiff has an impairment; (2) a life activity that Plaintiff claims has been substantially limited constitutes a major life activity under the ADA; and (3) the impairment substantially limits one of Plaintiff's major life activities. *See Bragdon v. Abbott*, 524 U.S. 624, 630-31 (1998). According to the EEOC's implementing regulations, major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment is substantially limiting when the individual is either (1) unable to perform a major life activity that the average person in the general population can perform, or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity, as compared to the condition, manner or

duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1).

The Court is presented with two possible theories under which Plaintiff might be disabled. First, at oral argument, Plaintiff claimed that he is disabled under the ADA because he cannot work. (Oral Arg., July 12, 2006.) Specifically, Plaintiff stated that (1) most jobs on the market are not available to him because he has difficulty standing, walking, lifting and performing repetitive work, and (2) due to his physical impairments, he cannot return to work as a "bin order filler." (Id.) The second theory, raised by the parties in their briefs, is that Plaintiff may be disabled under the ADA if he is substantially limited in his ability to perform manual tasks.[4]

To be substantially limited in the major life activity of working Plaintiff must be substantially restricted in his ability to perform a class of jobs or a broad range of jobs in various classes. *Skorup v. Modern Door Corp.*, 153 F.3d 512, 514-15 (7th Cir. 1998). An inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work; rather, Plaintiff's impairment must substantially limit employment generally. *Id.* In order for Plaintiff to be substantially limited in his ability to perform manual tasks, Plaintiff must have an impairment that prevents or severely restricts him

---

[4] In its motion for summary judgment, BCOP asserts that Plaintiff cannot show he is substantially limited in his ability to perform manual tasks and is therefore not disabled. Plaintiff challenged BCOP's conclusion in his response brief, though he never articulated on what grounds he claimed to be disabled under the ADA. (Pl.'s Am. Resp., May 2, 2006, at 3.) At oral argument, Plaintiff claimed that he is disabled under the ADA because he cannot work. (Oral Arg., July 12, 2006.) Because Plaintiff proceeds *pro se*, the Court gives him the benefit of the doubt and interprets Plaintiff's written and oral arguments in the broadest possible manner. Accordingly, the Court addresses both possible disabilities.

from doing activities that are of central importance to most people's daily lives, such as tending to personal hygiene and carrying out personal or household chores. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 201-02 (2002). If Plaintiff is merely restricted in some aspect of performing a manual task, he is not substantially impaired in that function. *Mack v. Great Dane Trailers*, 308 F.3d 776, 780-82 (7th Cir. 2002).

Plaintiff fails to provide any evidence establishing a genuine issue of material fact over whether his condition resulted in his being substantially limited in his ability to work or perform manual tasks. According to Plaintiff, his evidence of disability includes (1) a disability finding by the Social Security Administration (hereinafter "SSA"), (2) a "Total Temporary Disability" finding by the IIC, and (3) reports from Plaintiff's treating physicians that describe significant impairments. (Pl.'s Am. Resp., May 2, 2006, at 3-4.) As stated above, Plaintiff did not file a proper Local Rule 56.1 statement of material facts, either in response to BCOP's motion or in support of his own claims. This Court is not required to search through Plaintiff's briefs and exhibits in order to find evidence supporting his claim, *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994), and, without doing so, there is no evidence supporting Plaintiff's claim. In addition, the April 1995 doctor's report that releases Plaintiff to work with certain restrictions, (BCOP's L.R. 56.1 ¶ 9), combined with Plaintiff's admission in open court that, in June 1995, he was able to do office work and many types of light work, (Oral Arg., July 12, 2006), disprove Plaintiff's ADA claim and show that he was not disabled under the ADA.

Even when the Court attempted to find support for Plaintiff's claims in his various filings, the Court failed. First, Plaintiff argues that his receipt of SSA disability benefits supports his ADA claim. (Pl.'s Am. Resp., May 2, 2006, at 3.) A finding of disability by the SSA does not

- 9 -

equate to a finding of disability under the ADA because (1) the ADA requires an individualized inquiry into the ability of a particular person to meet the requirements of a particular position, while the SSA permits general presumptions about the individual's ability to work, and (2) it is immaterial for purposes of SSA disability determinations whether or not an individual can work if provided with reasonable accommodations whereas for ADA purposes this inquiry is critical. *Weigel v. Target Stores*, 122 F.3d 461, 466-67 (7th Cir. 1997). *See also Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) ("determinations made by the [SSA] concerning disability are not dispositive findings for claims arising under the ADA"). *Compare to Lawson v. CSX Trans., Inc.*, 245 F.3d 916, 923-24 (7th Cir. 2001) (SSA determination that benefits recipient with severe diabetes has problems with many of the organ systems in his body and limited ability to eat food satisfies ADA disability requirements.) However, while a SSA disability determination may not be dispositive of the issue, it may be relevant to the question of whether an ADA plaintiff is a qualified individual with a disability. *Weigel*, 122 F.3d at 467. In this case, Plaintiff merely attaches a 1999 SSA benefit statement to his brief. (Pl.'s Am. Resp., May 2, 2006, Ex. 31.) Neither Plaintiff's brief, nor the attached exhibit, describe the SSA findings regarding his disabilities and the Court will not simply assume that the SSA determination is relevant to, let alone dispositive of, Plaintiff's ADA claim.

Next, Plaintiff claims that the IIC reached a finding of "total temporary disability." (Pl.'s Am. Resp., May 2, 2006, at 3.) Other than a cover letter stating that an arbitrator's ruling has been upheld, the Court cannot find the IIC report, the arbitrator report, or any related evidence attached to Plaintiff's brief. As Plaintiff has not presented—properly or improperly—any

relevant evidence relating to an IIC "total temporary disability" determination, the Court cannot consider this unsupported statement as evidence supporting Plaintiff's claim.

Finally, Plaintiff refers to two doctor reports from March 1995 and June 15, 1995, and claims they support his ADA claim. The Court is unable to locate the March 1995 report, which Plaintiff labels "Exhibit 24," but did find the June 15, 1995 report attached to Plaintiff's original November 29, 2005 response to BCOP's motion for summary judgment. The June 15, 1995 report states that Plaintiff is experiencing back pain, cannot work because of his back pain, and is a suitable candidate for a rehabilitation program. (Pl.'s Resp., Nov. 2005, Ex. 19.) While this report shows that Plaintiff was experiencing pain in June 1995, it contains very little information about Plaintiff's condition and offers no real insight into whether Plaintiff was substantially limited in his ability to perform work or manual tasks. The significance of this evidence is further diminished by its proximity to the April 1995 doctor's report that releases Plaintiff to work, (BCOP's L.R. 56.1 ¶ 9), and because it was generated weeks after Plaintiff was fired by BCOP. (Id. ¶ 12.)

Plaintiff fails to produce any evidence from which the Court can determine whether his impairment prevents him from performing manual tasks or forecloses him from accepting a few, many, or most jobs in a particular class or in a broad range of classes. Without some evidence suggesting that Plaintiff is either unable to perform manual tasks or is precluded from performing a class of jobs or a broad range of jobs in various classes, his impairment does not meet the definition of a disability under the ADA. It follows that Plaintiff is not protected by the ADA.

2. <u>Plaintiff cannot show failure to accommodate.</u>

Even if the Court assumes that Plaintiff is disabled under the ADA, Plaintiff cannot show that BCOP discriminated against him by failing to reasonably accommodate his disability. Plaintiff argues that, under the ADA, if Plaintiff applied for a BCOP position that he was qualified to hold, BCOP was required to hire him for that position. Plaintiff contends that he was qualified for a variety of positions that BCOP posted, including an accounting position that he was interested in. (Oral Arg., July 12, 2006.) According to Plaintiff, BCOP refused to accept his application for the accounting position and never offered him an accounting position, but rather insisted that he take a "bin order filler" position or nothing. (Id.)

As an initial matter, Plaintiff misstates ADA law. The ADA prohibits an employer from discriminating against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *McPhaul*, 226 F.3d at 563 (quoting 42 U.S.C. § 12112(b)(5)(A)). The ADA does not, however, require an employer to hire every qualified, disabled job applicant whenever it has a job opening.

Next, Plaintiff does not present any evidence in support of his failure to accommodate claim. Plaintiff claims that he was qualified for, and agreed to accept, BCOP's accounting position but he does not present any evidence of his qualifications, his decision to apply for the accounting position, or BCOP's refusal to accept his application. Plaintiff suggests that he rejected several BCOP offers of part-time accounting work only—not full-time accounting work—but he does not submit any evidence in support of those claims. Similarly, Plaintiff does not present any evidence that shows BCOP considered him for "bin order filler" positions only,

nor evidence that shows Plaintiff expressed interest in, or agreed to accept, any other position at BCOP.

While Plaintiff fails to present evidence in support of his claims, BCOP submitted evidence showing that BCOP granted Plaintiff's requests for specific accommodations. According to the evidence, two years after Plaintiff's injury, BCOP initiated dialogue with Plaintiff to determine whether he could return to work for BCOP. After receiving the April 29, 1995 doctor report releasing Plaintiff to return to work but restricting him to a job that predominantly required standing and walking, with occasional sitting, and negligible bending and lifting, and a limitation on lifting no more than twenty pounds, BCOP concluded that Plaintiff could not return to his previous position as a "bin order filler." BCOP then met with Plaintiff and discussed three separate positions with Plaintiff. In particular, BCOP raised the possibility of Plaintiff taking a position in shipment planning, customer service, or accounting. (BCOP's L.R. 56.1 ¶¶ 9-10; Pl.'s Am. Resp., May 2, 2006, Ex. 29.) These jobs involved office work or light weight work that BCOP believed Plaintiff could handle. The evidence shows that Plaintiff rejected all of these positions, citing too much pressure, stress, and deadlines. (BCOP's L.R. 56.1 ¶ 10.) After Plaintiff refused to accept any of these positions, BCOP fired Plaintiff.

Plaintiff's challenges the credibility of BCOP's evidence. Plaintiff attacks BCOP's evidence as fraudulent and falsified, suggests that the April 20, 1995 notes from his meetings with BCOP—notes that Plaintiff himself attached to his brief and attempted to submit as evidence in this case—were doctored, and claims that evidence relating to IIC and IHRC proceedings are untrustworthy because investigators blindly accepted BCOP's evidence and rigged the proceedings for the sole purpose of rejecting Plaintiff's claims. (Oral Arg., July 12,

- 13 -

2006.) Plaintiff does not submit any evidence to support his accusations and he admitted as much at oral argument. (Id.)

Because all of the evidence establishes that Plaintiff was not disabled under the ADA and that BCOP did not fail to accommodate Plaintiff, Plaintiff's ADA claim cannot survive summary judgment.

### D.     ADEA Claim

Plaintiff claims BCOP discriminated against him based on his age, in violation of the ADEA. The ADEA makes it unlawful for an employer to discharge any individual because of such individual's age. 29 U.S.C. § 623(a)(1). Under his disparate treatment theory, Plaintiff must prove that his age actually played a role in BCOP's decision making process and had a determinative influence on the outcome. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000)). In other words, Plaintiff must establish that he would not have been terminated "but for" his employer's intentional age-based discrimination. *Id.* Plaintiff can prove age discrimination through either the direct method or indirect burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (assuming that the *McDonnell Douglas* framework applies in the ADEA context). Because Plaintiff does not present any direct evidence of age discrimination, however, he must proceed under the indirect burden-shifting framework.

To establish a prima facie case under the ADEA Plaintiff must show that (1) he is a member of the protected class, i.e., age forty or older, (2) he performed his job satisfactorily,

- 14 -

(3) despite his satisfactory job performance, he suffered a materially adverse employment action, and (4) younger BCOP employees situated similarly to Plaintiff were treated more favorably. *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001). If Plaintiff establishes a prima facie case, then the burden shifts to BCOP to articulate a legitimate, nondiscriminatory reason for its decision to fire him. *Grimm v. Alro Steel Corp.*, 410 F.3d 383, 385 (7th Cir. 2005). If BCOP asserts a legitimate, nondiscriminatory explanation, the burden returns to Plaintiff to show that BCOP's proffered reason is merely a pretext for age discrimination. *Id.*; *Horwitz*, 260 F.3d at 610.

Plaintiff cannot establish a prima facie case under the ADEA because he cannot show that he performed his job satisfactorily. To satisfy this element of the prima facie case, Plaintiff must demonstrate that his performance was satisfactory at the time of his termination—not just at some time during his employment. *Alexander v. Cit Tech. Fin. Servs., Inc.*, 217 F. Supp. 2d 867, 888 (N.D. Ill. 2002) (citing *Hong v. Children's Mem'l Hosp.*, 993, F.2d 1257, 1262 (7th Cir. 1993)). In this case, it is undisputed that Plaintiff did not work from the Spring of 1993 until June 2, 1995, when BCOP fired him. (BCOP's L.R. 56.1 ¶¶ 4-5.) Not having worked for the two years prior to his termination, Plaintiff cannot contend that he was performing his job satisfactorily in June 1995. To support his claim, Plaintiff cites to numerous BCOP employment evaluations and argues that he was an outstanding BCOP employee. (Pl.'s Am. Resp., May 2, 2006, at 4, Ex. 34.) Plaintiff's employment evaluations cover 1984 to 1990, (id.), and cannot establish that his performance was satisfactory in 1995. It follows that the second element of Plaintiff's prima facie case is not met.

Additionally, Plaintiff cannot establish a prima facie case under the ADEA because he cannot show that younger similarly situated employees were treated more favorably. In his brief, Plaintiff describes Robert Mallo and Jim Lester as younger BCOP employees with back injuries who were given light work positions doing office work and customer service. (Pl.'s Am. Resp., May 2, 2006, at 5.) Plaintiff claims that he expressed interest in doing similar work after his back injury but BCOP refused to consider him for the positions because of his age. (Id.) Plaintiff also claims that BCOP refused to hire him for a forklift-bulk order position and instead hired Chuck Stolzeben, a twenty-four-year-old with less education and work experience than Plaintiff. (Id.) Plaintiff does not present any evidence regarding the age, physical health, or employment history of Mallo, Lester, or Stolzeben, and never mentions whether any of these three men were unable to work for two years, as was the case with Plaintiff. It follows that Plaintiff cannot show that Mallo, Lester, or Stolzeben were similarly situated younger employees who received more favorable treatment.

Because Plaintiff fails to establish that he performed his job satisfactorily or that younger similarly situated employees received more favorable treatment, Plaintiff's unsupported allegations of age discrimination cannot withstand summary judgment.

### E.     ERISA Claim

Plaintiff alleges that BCOP violated ERISA's "twenty-one day rule" when BCOP offered Plaintiff a pension and then fired him two weeks later, without keeping the pension offer open for twenty-one days while he contemplated it.

As an initial matter, Plaintiff does not present any evidence that suggests BCOP offered him a pension. The evidence submitted to the Court establishes that, on May 19, 1995, BCOP discussed with Plaintiff the opportunity for Plaintiff to apply for a disability pension. (BCOP's L.R. 56.1 ¶ 11.) BCOP offered to help Plaintiff with the application and asked him to respond to the offer so the process could be expedited. (Id.) Two weeks later, Plaintiff had not responded to the offer to apply for a disability pension and his employment was terminated. (Id. ¶ 12.) Nonetheless, BCOP's offer to assist Plaintiff with the disability pension application remained open. (Id.) Thus, while BCOP discussed with Plaintiff an application for a pension, it never offered Plaintiff a pension.

Having never been offered a pension, Plaintiff has no ERISA claim. ERISA was enacted, in part, to protect the interests of participants in employee benefit plans by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans. 29 U.S.C. § 1001(b). Section 502(a) of ERISA authorizes an ERISA employee benefit plan participant or beneficiary to bring a cause of action to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. 29 U.S.C. § 1132(a). *See also Madden v. Country Life Ins. Co.*, 835 F. Supp. 1081, 1085 (N.D. Ill. 1993) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987)). An ERISA participant is any employee or former employee of an employer, or any member of an employee organization who is or may be eligible to receive a benefit of any type from a benefit plan. 29 U.S.C. § 1002(7). Because Plaintiff never applied for a pension and was never offered a pension, he was never eligible to receive a benefit from a pension plan. It follows that Plaintiff cannot proceed with his ERISA claim.

Finally, even if BCOP did offer Plaintiff a pension, BCOP was not required to keep that offer open to Plaintiff in accordance with a "twenty-one day rule" because no such rule exists under ERISA.

### F.     Retaliation and Wrongful Discharge

Plaintiff claims that BCOP fired him in retaliation for filing a workers' compensation claim. BCOP counters that Plaintiff's claim is barred by statute of limitations and is baseless.

Illinois recognizes the tort of retaliatory discharge where an employer fires an employee in retaliation for filing a workers compensation claim. *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978). An employer is not liable for retaliatory discharge solely because the employer fired an employee who has previously filed a workers' compensation claim. *Heldenbrand v. Roadmaster Corp.*, 660 N.E.2d 1354, 1357 (Ill. App. Ct. 1996). Rather, to establish a claim of retaliatory discharge under Illinois law Plaintiff must prove that (1) he was an employee of BCOP prior to his injury, (2) he exercised a right granted by the Workers' Compensation Act, and (3) his discharge was causally related to the filing of a claim under the Act. *Jackson v. Bunge Corp.*, 40 F.3d 239, 242 (7th Cir. 1994).

As an initial matter, Plaintiff's claim is barred by Illinois's statute of limitations. Plaintiff alleges that he was wrongfully discharged on June 2, 1995. Plaintiff filed this lawsuit against BCOP on June 14, 2001, (Dkt. No. 1), more than six years later. The statute of limitations for a wrongful discharge claim in Illinois is five years. *Berghoff v. R.J. Frisby Mfg. Co.*, 720 F. Supp. 649, 652 (N.D. Ill. 1989); *Henon v. Lever Bros. Co.*, 449 N.E.2d 196, 197-98 (Ill. App. Ct. 1983)

(applying 735 ILCS 5/13-205 to retaliatory discharge). It follows that Plaintiff's wrongful discharge claim is barred by the relevant statute of limitations.[5]

Even if Plaintiff's wrongful discharge claim was not barred by the statute of limitations, Plaintiff cannot prove that his discharge was causally related to the filing of a claim under the Workers' Compensation Act. Plaintiff filed his workers' compensation claim in July 1993 but was not fired by BCOP until June 1995. A two-year gap between the filing of a workers' compensation claim and an employee's discharge indicates a lack of causal connection. *See Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 151 (7th Cir. 1994) (no causal connection where plaintiff is retained for one-and-a-half years after filing claim); *Bush v. Commonwealth Edison*, 990 F.2d 928, 933-34 (7th Cir. 1993) (one-and-a-half year delay is too speculative to justify finding a causal connection); *Fratto v. Am. Airlines, Inc.*, No. 94 C 7765, 1996 WL 288520, at *9 (N.D. Ill. May 30, 1996) (no causal connection where plaintiff is fired two-and-a-half years after injury and fourteen months after filing workers' compensation claim). The absence of a causal connection is even stronger in this case because Plaintiff never reported to work in the intervening two years and, from February 1995 to June 1995, BCOP made repeated efforts to meet with Plaintiff to determine if he could return to work. *See Paz v. Commonwealth Edison*, 732 N.E.2d 696, 701-02 (Ill. App. Ct. 2000) (no causal connection where plaintiff filed complaint two years earlier and had not been to work in five months).

---

[5] Plaintiff did not address the statute of limitations issue in his brief. At oral argument, Plaintiff suggested that, if the statute of limitations had run, it was his lawyer's fault because she was supposed to file this lawsuit earlier. Plaintiff's argument is unsupported and irrelevant to the instant motion.

Because Plaintiff's wrongful discharge claim is time barred, and because all of the evidence submitted to the Court suggests Plaintiff's claim is baseless and unsupported, Plaintiff's wrongful discharge claim fails.

### III. Conclusion

For the reasons stated above, BCOP's motion for summary judgment is granted.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: July 31, 2006.

Copies have been mailed to:

MR. GERALD KAVONIUS
2107 South 4th Street
Rockford, IL 61104

THOMAS G. DiCIANNI, Esq.
Ancel, Glink, Diamond, Bush,
  DiCianni & Rolek, P.C.
140 South Dearborn Street
6th Floor
Chicago, IL 60603

*Pro Se* Plaintiff

Attorneys for Defendants